UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CIRCUIT CHECK INC.,

        Plaintiff,

  v.                                    Case No. 12-C-1211

QXQ INC.,

        Defendant.

**DECISION AND ORDER**

Presently before me are a number of motions, including a motion to compel, a motion to transfer, and a motion seeking a claim construction hearing. I address each of these motions herein.

**I. Motion to Transfer**

Before deciding any other motions, I must decide if this case should remain in this district. Defendant QxQ Inc., a California company, has moved to transfer this patent infringement case to the Northern District of California, arguing that the connections between the Eastern District of Wisconsin and this case are so limited that litigating the action here would be demonstrably less convenient than litigating in the Northern District of California. Plaintiff Circuit Check Inc., a Minnesota company, opposes the motion. For the reasons given below, the motion will be denied.

QxQ relies on 28 U.S.C. § 1404(a), which authorizes changes of venue "for the convenience of parties and witnesses, in the interest of justice." "With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and

distance from resources in each forum. Other related factors include the location of material events and the relative ease of access to sources of proof." *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.,* 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted). In assessing the interest of justice, "courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *Id.* (citations omitted).

### A. Convenience

I will begin with the Plaintiff's argument that its choice of forum is entitled to some degree of deference. Here, that presumption is eroded somewhat by the fact that the Eastern District of Wisconsin is not Circuit Check's first choice of forum. Originally, it filed an action in the District of Minnesota (where it is located), and that action was dismissed after QxQ filed a motion to dismiss for lack of personal jurisdiction.[1] It only filed in this district after receiving QxQ's motion to dismiss. Some courts note that the plaintiff's choice of forum is to be given less weight when the plaintiff brings suit outside its home state. 15 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3848 (3d ed. 2007); *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.,* 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'") (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981)). Given the fact that this is the Plaintiff's second choice of

---

[1]It is unclear if the motion was granted or if Circuit Check, which had by then filed this action in the Eastern District of Wisconsin, simply acquiesced in its dismissal.

2

forum and that Wisconsin is not its home state, I am satisfied that little weight should be given to the mere fact that the Plaintiff filed the action here.

The rest of the § 1404 factors would appear to support a transfer of venue. With the case having no obvious connection to this district, Circuit Check relies on the fact that a witness (it describes it as a "key" witness) is located in this district. Specifically, the Plexus Corporation of Neenah is a customer of Circuit Check. Plexus is also a customer of QxQ, and QxQ admits that it has sold some of the allegedly infringing products to Plexus. In fact, QxQ sold some 122 "Plate B" test fixtures (nearly $1 million worth) to Plexus after Circuit Check's patent was issued. Circuit Check of course will claim that whatever its profits would have been on these sales are its damages, and it has a Wisconsin salesman who would testify to that effect. In addition to the damages question, Circuit Check argues that Plexus is important in determining patent validity. In particular, QxQ has alleged that two documents Plexus published constitute prior art that would invalidate the patents in-suit. Thus, this constitutes an additional link to the Eastern District of Wisconsin.

QxQ notes, however, that if the location of damages witnesses and evidence is an important metric in the convenience analysis, then that analysis mandates venue in the Northern District of California, not here. In other words, it believes Circuit Check's own arguments actually support transfer because there is so much more evidence in the Northern District than there is here. QxQ's president explains that QxQ's products are used in the manufacturing and testing of electronics products and devices—the kinds of products that are produced in great volume in the Silicon Valley area of California. (ECF No. 24-2 ¶ 11.) Sales to this area are "by far" the majority of QxQ's sales volume. He further explains that QxQ's sales to Wisconsin only constitute about two percent of its

3

overall sales. (*Id.* at ¶ 12.) Thus, if we are looking at the location of infringing sales as a key factor, that factor militates *against* Wisconsin as a venue.

In addition, the mere fact that Plexus was involved in some of the prior art does not mean this location is any more convenient. QxQ argues that the prior art documents exist and stand on their own, and in fact similar documents from another company, TTCI, establish the same thing. None of these documents requires witness testimony, much less testimony from this district, and QxQ states that it has no intention to call any Plexus witnesses.

I am satisfied, based on the above, that the connections to this District are indeed minimal and that under other circumstances a transfer might be warranted. Even so, we must recognize that many of the traditional inconveniences may now be mitigated through modern technology:

> In our age of advanced electronic communication, including high-quality videoconferencing, changes of venue motivated by concerns with travel inconvenience should be fewer than in the past. Today documents can be scanned and transmitted by email; witnesses can be deposed, examined, and cross-examined remotely and their videotaped testimony shown at trial.

*In re Hudson,* 710 F.3d 716, 719 (7th Cir. 2013).

Given these advances in technology, the fact that one forum might be somewhat more convenient than another is not a compelling reason to transfer unless the interests of justice also strongly support transferring the case. I address that question below.

### B. Interests of Justice

In assessing the interests of justice, "courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *Research Automation,* 626 F.3d at 978

4

(citations omitted). Here, much of the interests of justice analysis is essentially neutral and is not argued by the parties. The key factor is the speed to trial in this court versus a transferee court.

Here, the motion to transfer was filed nearly ten months after the case was filed in this District and six months after the scheduling order was issued. Dispositive motions are due in less than two months. It is unclear whether a transferee court would accommodate that schedule. Moreover, parties requesting changes of venue should be encouraged to act with reasonable promptness or forfeit their right to do so. *Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir. 1989). Here, there is no explanation for why the motion to transfer was not brought earlier. If the other forum were truly so convenient, one would expect much swifter action to transfer the case there.

Although some of the delay in this case was due to the fact that Circuit Check originally filed in a forum that lacked personal jurisdiction over QxQ, compounding matters by transferring a case nearly a year after it was filed does not seem to be a wise solution. In sum, the interests of justice do not warrant transferring this action, even if the convenience factors might otherwise favor a change of venue. Because both convenience and the interests of justice are required in order to transfer a case under § 1404, the motion will be denied.

**II. Motion to Compel or Bifurcate**

Plaintiff has filed a motion to compel an answer to its interrogatory asking for information about the Defendant's allegedly infringing sales. Plaintiff asked, in Interrogatory No. 5, that QxQ describe in detail the number of units sold, gross and net revenue earned, the costs of production and sales, operating profit, and the person who purchased each unit and the location of that person.

5

QxQ does not deny that this information is relevant to the calculation of damages. Instead, the dispute is whether QxQ may respond to the interrogatory by providing files that the Plaintiff may inspect at QxQ's facility in California rather than supplying a direct answer. The parties agree that inspection of these files could take a number of weeks.

> In responding to the interrogatory as it did, QxQ cited Rule 33(d), which states as follows:
>
> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

The key aspects of the rule are twofold. In order for Rule 33(d) to apply, the desired answer must be ascertainable from the records themselves, and the task of ascertaining that answer must not be more burdensome for the inquiring party than it would be for the responder. Here, the Plaintiff argues that QxQ flunks both parts of the Rule 33(d) test: the answer cannot be readily ascertained from QxQ's records and, even if it could, the burden of ascertaining that answer will be much heavier for Circuit Check to bear, particularly given that QxQ would require Circuit Check to examine the records in California.

To understand the dispute it is necessary to understand the records. QxQ states that the records are job-related records organized sequentially by date. It argues that although the work would be tedious, producing an answer to the interrogatory would be simple. All that needs to be

6

done is to determine whether each job file pertains to an HP/Agilent 3070 fixture and whether it has a "drill file" that is in one of two specific formats. If the record meets those criteria, then the person reviewing the files can record the name of the customer on the file. This simple process, although cumbersome, would involve the same amount of effort regardless of which party did it.

Circuit Check argues, however, that this review process would not produce an answer to its interrogatory. If it had a given record that met the above criteria, for example, all that would tell Circuit Check is that the product sold *might* have been one of the accused products. This is because the criteria identified by QxQ would apply not just to accused products but also to products using prior art and non-infringing technology. (ECF No. 34 at 2 n.2.) In essence, the criteria QxQ has identified are not specific enough to isolate the sales of the accused products, and as such Circuit Check would have no way of ascertaining a reliable answer to its interrogatory.

I am satisfied that Rule 33(d) was not designed to be so broad as to encompass a situation in which an inquiring party must resort to speculation to determine whether its opponent's business records actually reveal damages or not. The Rule, which provides an exception to the normal process of answering interrogatories, requires the answer to be manifest in the records such that the answer to the interrogatory "may be determined." Fed. R. Civ. P. 33(d). Here, it is apparent that additional steps would be required to make the connection between the files QxQ would provide and the identity of customers who were using accused products. Thus, it is not clear that the answer to the interrogatory may be determined from the records themselves. Moreover, it is similarly doubtful that it would be just as easy for Circuit Check to perform the review as it would be for QxQ. Accordingly, I conclude that QxQ's reliance on Rule 33(d) is not appropriate under these circumstances. The motion to compel will therefore be granted.

7

**III. Motion for Claim Construction Hearing**

Circuit Check brought a motion seeking a claim construction hearing. It asserts that only one term is in dispute. In particular, Circuit Check seeks a construction of the term "adjacent" that would construe the term to encompass a test fixture with ablating of a colorant nearby, but not actually contacting or touching, the holes to be populated by probes. In other words, "adjacent" means "next to" or "nearby" but does not necessarily mean the two things actually touch.

QxQ has not filed any opposition to this motion, which means the term "adjacent" is not actually in dispute. Courts do not generally construe claims unless they are disputed. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) (en banc) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.") Even so, the construction Circuit Check proposes is a reasonable one and is borne out by a common understanding of the term "adjacent." Accordingly, I will adopt Circuit Check's construction of that term.

**IV. Motions to Seal**

Finally, Circuit Check has brought two motions to seal documents involving proprietary sales information. The content of the documents is very limited and I conclude that the documents are indeed worthy of confidentiality under Fed. R. Civ. P. 26(c)(1)(G). The motions will therefore be granted.

**V. Conclusion**

For the reasons given above, the motion to transfer is **DENIED**. The motion to compel is **GRANTED**. The motion for claim construction is **GRANTED**, and Circuit Check's proposed

8

construction of the term "adjacent" is adopted. The motions to seal are **GRANTED**, and the documents referred to in those motions should be filed by the clerk under seal.

    **SO ORDERED** this  20th  day of November, 2013.

                                      s/ William C. Griesbach
                                      William C. Griesbach, Chief Judge
                                      United States District Court