UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

USDC EDWI
FILED IN GREEN BAY DIV

APR 2 4 2014

AT____O'CLOCK____M
JON W. SANFILIPPO

CIRCUIT CHECK INC.,

        Plaintiff,

    v.                                         Case No. 12-C-1211

QxQ INC.,

        Defendant.

---

## JURY INSTRUCTIONS

---

### JURY INSTRUCTION NO. 18

### SUMMARY OF CONTENTIONS

You have now heard all of the evidence. I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, Circuit Check seeks money damages from QXQ for infringing the Circuit Check patents by making, using, selling and offering for sale products and processes are covered by claims of the Circuit Check patents. The products and processes that infringe are test fixtures containing Plates B and C.

QXQ does not deny it has infringed the claims of the Circuit Check patents but argues the infringed claims are invalid.

Your job is to decide whether the claims of the Circuit Check patents are invalid. If you decide that any claim of the Circuit Check patents is not invalid, you will then need to decide any money damages to be awarded to Circuit Check to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any

infringement was willful, that decision should not affect any damage award you make. I will take willfulness into account later.

## JURY INSTRUCTION NO. 19

## CONSIDERATION OF ALL EVIDENCE REGARDLESS OF WHO PRODUCED - 1.08

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

## JURY INSTRUCTION NO. 20

## WEIGHING THE EVIDENCE - 1.11

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

## JURY INSTRUCTION NO. 21

## DEFINITION OF "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE - 1.12

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

2

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

## JURY INSTRUCTION NO. 22

## TESTIMONY OF WITNESS: DECIDING WHAT TO BELIEVE - 1.13

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- the witness's age;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

3

## JURY INSTRUCTION NO. 23

## PRIOR INCONSISTENT STATEMENT OR ACTS - 1.14

You may consider statements given by the parties before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath, or acted in a manner that is inconsistent with his testimony here in court, you may consider the earlier statement or conduct only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

In considering a prior inconsistent statements or conduct, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

## JURY INSTRUCTION NO. 24

## LAWYER INTERVIEWING WITNESS - 1.16

It is proper for a lawyer to meet with any witness in preparation for trial.

## JURY INSTRUCTION NO. 25

## ABSENCE OF EVIDENCE - 1.18

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

4

**JURY INSTRUCTION NO. 26**

**EXPERT WITNESSES - 1.21**

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

**JURY INSTRUCTION NO. 27**

**BURDEN OF PROOF - 1.27**

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

**JURY INSTRUCTION NO. 28**

**CLEAR AND CONVINCING EVIDENCE - 1.28**

When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true.

This is a higher burden of proof than "more probably true than not true." Clear and convincing evidence must persuade you that it is "highly probably true."

5

## THE PATENT SYSTEM - 11.2.1

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about those aspects of patent law that specifically relate to this case.

## THE PARTS OF A PATENT - 11.2.3

At the beginning of the case, I described the parts of a patent. For clarity, I am going to review the parts of a patent for you again. A patent includes two basic parts: a written description of the invention, and the patent claims. The written description, which may include drawings, is often called the "specification" of the patent.

You have been provided with copies of the Circuit Check patents. Please look at the '796 patent as I identify its different sections. Other patents are also involved in this case. I am using this particular patent as an example to describe the various parts of a patent.

The first page of the '796 patent provides identifying information, including the date the patent issued and patent number along the top, as well as the inventor's name, the filing date, the assignee, which is the company or individual that currently owns the patent, and a list of the prior art publications considered in the Patent Office during the time the patent was being sought.

The specification of the patent begins with a brief statement about the subject matter of the invention, which is called an abstract. This is found on the first page. Next, are the drawings, which

6

appear as Figures 1 and 2 on the next two pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent specification.

The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the '796 patent begins at column 1, line 1, and continues to column 6, line 34. It includes a technical field section, background section, a summary of the invention, and a detailed description of the invention, including some specific examples.

The written description is followed by one or more numbered paragraphs, which are called the claims. The claims may be divided into a number of parts or steps, which are called "claim limitations" or "claim requirements." In the '796 patent, the claims begin at column 6, line 35 and continue to the end of the patent, at column 8, line 15.

### JURY INSTRUCTION NO. 31
### THE PATENT CLAIMS - 11.2.4

The claims of a patent are the numbered sentences at the end of the patent. The claims describe what the patent owner may prevent others from doing.

Claims are usually divided into parts or steps, called "limitations" or "requirements." For example, a claim that covers the invention of a table may describe the tabletop, four legs and glue that holds the legs and the tabletop together. The tabletop, legs and glue are each a separate limitation or requirement of the claim.

We are concerned with claims 1-3, 5, 6, 8-11, 13, and 14 of the '796 patent; claims 1-3, 5, 7-9, 11, 12, and 14 of the '766 patent; and claims 1-3, 5, 7- 9, 11 and 12 of the '566 patent. Circuit

7

Check contends QXQ infringed these claims.  QXQ does not dispute infringement but contends each infringed claim is invalid.

**JURY INSTRUCTION NO. 32**

**INFRINGEMENT:  INTERPRETATION OF THE PATENT CLAIMS - 11.2.5**

The owner of a patent has the right to prevent others from making, using, offering for sale, and selling the invention covered by the patent.  A product or process infringes a patent if that product or process is covered by at least one claim of the patent.

I will tell you the meaning of any disputed terminology in the patent claims.  You must use the meanings I give you when you decide whether the patent is invalid.

**JURY INSTRUCTION NO. 33**

**INDEPENDENT AND DEPENDENT CLAIMS - 11.2.6**

Patent claims may exist in two forms, called independent claims and dependent claims.  An independent claim stands on its own and does not refer to any other claim of the patent.  A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the requirements of the other claims to which it refers, as well as the requirements in the dependent claim itself.

Earlier I described a hypothetical patent claim for a table that described the tabletop, four legs, and glue to hold the legs and tabletop together.  That is an example of an independent claim. In that same hypothetical patent, a dependent claim might be one that stated, "the same table in the initial claim, where the tabletop is square."

8

In this case, with respect to the claims we are concerned about, claims 1 and 10 of the '796 patent are independent claims. Claims 3, 5, 6, 8, and 9 of the '796 patent depend upon claim 1. Claims 11, 13 and 14 of the '796 patent depend upon claim 10.

Claims 1 and 8 of the '766 patent are independent claims. Claims 3, 5, and 7 of the '766 patent depend upon claim 1. Claims 9, 11, 12, and 14 of the '766 patent depend upon claim 8.

Claims 1 and 8 of the '566 patent are independent claims. Claims 2, 3, 5, and 7 of the '566 patent depend upon claim 1. Claims 9, 11 and 12 of the '566 patent depend upon claim 8.

### JURY INSTRUCTION NO. 34

### INTERPRETATION OF THE PATENT CLAIMS - 11.2.9

I have provided you with copies of the three Circuit Check patents. I have previously defined one of the words in some of the claims. You must use this definition in making your decision. The word I have defined is the word "adjacent," which is used in claims 1 and 10 of the '796 patent. I have determined "adjacent" means "next to" or "nearby" but does not necessarily mean the two things actually touch.

### JURY INSTRUCTION NO. 35

### INFRINGEMENT - DEFINITION - 11.2.11.1

As I stated in the previous instruction, infringement occurs if each requirement of a claim is found in QXQ's product or process. As I have also explained, Circuit Check contends that QXQ infringed claims 1-3, 5, 6, 8-11, 13, and 14 of the '796 patent; claims 1-3, 5, 7-9, 11, 12, and 14 of the '766 patent; and claims 1-3, 5, 7- 9, 11 and 12 of the '566 patent. As I explained at the

9

beginning of the case, QXQ does not dispute that test fixtures containing Plates B and C infringe each of the above claims of the Circuit Check patents. This means Circuit Check is not required to persuade you that test fixtures sold by QXQ containing Plates B and C infringe each of the above claims of the Circuit Check patents. You must accept as true that QXQ has infringed each of the Circuit Check patents. As I will explain in a moment, QXQ contends that the Circuit Check patents are invalid. However, for purposes of your decision making, you must accept as true that all of the above claims of the Circuit Check patents are found within QXQ's test fixtures containing Plate B and C.

### JURY INSTRUCTION NO. 36
### WILLFUL INFRINGEMENT - 11.2.14

Circuit Check contends that QXQ infringed Circuit Check's patent willfully. You are required to decide this issue because it may be relevant to other issues that I may have to consider.

Circuit Check must prove willful infringement by clear and convincing evidence. "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. You also may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt," which is a higher burden of proof than "clear and convincing" evidence. You should not apply the criminal standard in this case.

To succeed on its contention that QXQ infringed the patent willfully, Circuit Check must prove two things by clear and convincing evidence:

       1. There was a high likelihood that QXQ's actions constituted infringement of a valid patent. In making this determination, you may not consider QXQ's actual state of mind.

10

2. QXQ knew of the high likelihood that it was infringing a valid patent, or this likelihood was so apparent that QXQ should have known of it.

**JURY INSTRUCTION NO. 37**

**VALIDITY - GENERAL - 11.3.1**

QXQ has challenged the validity of claims 1-3, 5, 6, 8-11, 13, and 14 of the '796 patent; claims 1-3, 5, 7-9, 11, 12, and 14 of the '766 patent; and claims 1-3, 5, 7- 9, 11 and 12 of the '566 patent on the ground that each of those claims is invalid for obviousness.

Each of the claims of the Circuit Check patents is presumed to be valid. For that reason, QXQ has the burden of proving invalidity by clear and convincing evidence. "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. As I indicated earlier, you also may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt," which is a higher burden of proof than "clear and convincing" evidence. You must not apply the criminal standard in this case.

You must evaluate and determine separately the validity of each claim of the Circuit Check patents.

**JURY INSTRUCTION NO. 38**

**SECTION 103 DEFENSES – DEFINITION OF "PRIOR ART" - 11.3.3**

In addressing QXQ's invalidity defense, you will have to consider what is disclosed in the "prior art."

The parties agree the following references are prior art:

11

1. "Statement of Work (Sow) for Test Fixture Development" from The Test Connection, Inc. ("TTCI"), referred to as the "TTCI specifications;

2. "ICT Standard Specification" by Plexus Corp., referred to as "the Plexus specification"; and

3. The method depicted in Figure 1 of Circuit Check patents (Figure 5 of the '766 patent) and described in the written specification of those patents.

The parties dispute whether the following references are prior art:

4. Rocking carvings, referred to as "petroglyphs" or "cave art";

5. Engraved signage; and

6. The machining technique known as "Prussian Blue."

Before you may consider any disputed reference to be prior art for purposes of QXQ's defense of obviousness, QXQ must prove by clear and convincing evidence that the reference was reasonably pertinent to the Circuit Check patents. Even if a reference is not within the field of the Circuit Check patents, the reference is reasonably pertinent to the Circuit Check patents if the reference is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering the problem addressed by the Circuit Check patents.

### JURY INSTRUCTION NO. 39
### PERSON OF ORDINARY SKILL - 11.2.2

Some issues in patent cases are determined by reference to a "person of ordinary skill in the field of the invention," a term that I will use later in these instructions. In this case, the field of the invention is circuit board testers and test fixtures used in the manufacture of electronics.

12

It is up to you to decide the level of ordinary skill.  In making this decision, you should consider all the evidence, including:

- the levels of education and experience of persons working in the field;

- the types of problems encountered in the field; and

- the sophistication of the technology in the field.


### JURY INSTRUCTION NO. 40

### OBVIOUSNESS - 11.3.6

As I have stated, QXQ contends that claims 1-3, 5, 6, 8-11, 13, and 14 of the '796 patent; claims 1-3, 5, 7-9, 11, 12, and 14 of the '766 patent; and claims 1-3, 5, 7- 9, 11 and 12 of the '566 patent are invalid because they are obvious.

To succeed on this contention, QXQ must prove by clear and convincing evidence as to the particular claim you are considering that a person of ordinary skill in the field of the invention, who knew about all the prior art existing at the time the invention was made, would have come up with the invention at that time.

In deciding obviousness, you should put yourself in the position of a person with ordinary skill in the field at the time of the claimed invention.  You must not use hindsight; in other words, you may not consider what is known now or what was learned from Circuit Check's patent.  In addition, you may not use Circuit Check's patent as a roadmap for selecting and combining items of prior art.

In deciding obviousness, you may also consider whether a person of ordinary skill in the field would have been discouraged from following the path the inventor took, keeping in mind

13

that Circuit Check is not required to show such discouraging factors. As I have stated, QXQ has the burden of proving obviousness by clear and convincing evidence.

In making your decision regarding obviousness, you should consider the following:

1) The scope and content of the prior art. You may consider prior art that was reasonably relevant to the problem the inventor faced, including prior art in the field of the invention and prior art from other fields that a person of ordinary skill would consider when attempting to solve the problem.

2) Any differences between the prior art and the invention in the patent claim.

3) The level of ordinary skill in the field of the invention at the time of the invention.

4) Any of the indications of non-obviousness described in the next instruction that are shown by the evidence.

### JURY INSTRUCTION NO. 41

## OBVIOUSNESS – ADDITIONAL FACTORS INDICATING
## NON-OBVIOUSNESS - 11.3.6.1

As I stated in the previous instruction, in deciding obviousness you should consider any of the following factors that, if present in the case, may indicate the invention was not obvious.

- the invention achieved commercial success, so long as the commercial success resulted from the claimed invention, rather than from something else, such as innovative marketing;

- the invention satisfied a long-felt need;

- others failed in attempting to make the invention;

- others copied the invention;

- the invention achieved unexpected results;

14

- QXQ or others in the field praised the invention;

- persons of ordinary skill in the field of the invention expressed surprise at the making of the invention; or

- the inventor proceeded contrary to accepted wisdom.

Not all of these factors may be present. No single factor is more or less important than the others.

### JURY INSTRUCTION NO. 42

### OBVIOUSNESS – COMBINING OF PRIOR ART REFERENCES - 11.3.6.2

Because most inventions are built on prior knowledge, the fact that each of the elements of the claim may be found in prior art is not enough, by itself, to prove obviousness. In determining whether QXQ has proved obviousness, you may combine multiple items of prior art only if there was an apparent reason for a person of ordinary skill in the field to combine them in the same way as in Circuit Check's claimed invention. In deciding this, you may consider, among other things, any of the following factors:

- what the prior art suggests about combining;

- the knowledge possessed by persons who have ordinary skill in the field of the invention; and

- the effects of market pressures and design needs that existed at the time, and the number of identified and predictable solutions for those demands.

You should not think that a person of ordinary skill attempting to solve a problem will be led only to those elements of prior art designed to solve the same problem. Common sense dictates that familiar items may have obvious uses beyond their primary purposes, and in many cases a person

15

of ordinary skill will be able to fit the teachings of multiple prior art references together like pieces of a puzzle.

## JURY INSTRUCTION NO. 43
## DAMAGES - GENERAL - 11.4.1

If you find any claim of the Circuit Check patents valid, you must then consider what amount of damages to award to Circuit Check. Circuit Check must prove damages by a preponderance of the evidence.

When I say Circuit Check must prove damages by "a preponderance of the evidence," what I mean is that when you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true. The preponderance of the evidence standard is lower than the "clear and convincing" standard of proof.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find infringement, you are to award Circuit Check damages adequate to compensate Circuit Check for that infringement. The damages you award are intended to compensate the patent holder, not to punish the infringer.

## JURY INSTRUCTION NO. 44
## TWO TYPES OF DAMAGES – LOST PROFITS & REASONABLE ROYALTY - 11.4.2

There are two types of damages that Circuit Check may be entitled to recover: lost profits, and a reasonable royalty.

16

Lost profits consist of any actual reduction in business profits Circuit Check suffered as a result of QXQ's infringement. A reasonable royalty is defined as the amount the patent owner and someone wanting to use the patented invention would agree upon as a fee for use of the invention. I will describe shortly what Circuit Check must prove to recover either type of damages.

Circuit Check is entitled to recover no less than a reasonable royalty for each infringing sale, even if Circuit Check cannot prove that it suffered lost profits in connection with that sale.

**JURY INSTRUCTION NO. 45**

**LOST PROFITS - 11.4.3**

To recover lost profits, Circuit Check must prove two things:

> 1. A reasonable probability that, if QXQ had not infringed, Circuit Check would have made additional sales of the patented product or process that QXQ made.

> 2. The amount of profit Circuit Check would have made on those sales. Circuit Check does not need to prove this amount with precision, and if there are uncertainties regarding the specific amount of lost profits, you may resolve those uncertainties against QXQ.

**JURY INSTRUCTION NO. 46**

**LOST PROFITS – PANDUIT TEST - 11.4.3.1**

Circuit Check may establish that it is reasonably probable that it would have made additional sales of the patented product or process is by proving three things:

> 1. There was a demand for the patented product;

> 2. There was no acceptable, non-infringing substitute for the patented product; and

17

3. Circuit Check was capable of satisfying the demand.

An "acceptable, non-infringing substitute" is a product that has the advantages of the patented invention that were important to the purchasers of QXQ's product. If purchasers of QXQ's product were motivated to purchase that product because of features that were available only from that product and Circuit Check's patented product, then other products are not acceptable substitutes, even if they otherwise competed with Circuit Check's and QXQ's products.

## JURY INSTRUCTION NO. 47
## LOST PROFITS - AMOUNT - 11.4.3.6

If you conclude that Circuit Check has proved that it lost profits because of QXQ's infringement, the lost profits that you award should be the amount that Circuit Check would have made on any sales that Circuit Check lost because of the infringement, minus the additional costs that Circuit Check would have incurred in making those sales.

Circuit Check is required to prove the amount of its lost profits to a reasonable probability and may not recover amounts that are speculative. However, mathematical certainty is not required, and if the reason Circuit Check has difficulty proving the amount of its lost profits is that QXQ did not maintain adequate records, then you should resolve any doubts as to the amount of lost profits in Circuit Check's favor.

## JURY INSTRUCTION NO. 48
## REASONABLE ROYALTY - 11.4.4

Circuit Check seeks to recover a reasonable royalty.

18

Circuit Check is entitled to recover a reasonable royalty for any of QXQ's infringing sales for which Circuit Check did not prove lost profits.

A royalty is a payment made to the owner of a patent by someone else so that he can make, use, sell, or import the patented invention. A "reasonable royalty" is the amount Circuit Check and QXQ would have agreed upon as a royalty at the time QXQ's infringement began.

In determining a reasonable royalty, you should assume that Circuit Check would have been willing to allow QXQ to make, use, sell, or import the patented invention and that QXQ would have been willing to pay Circuit Check to do so. You should take into account what Circuit Check's and QXQs' expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both Circuit Check and QXQ would have believed that Circuit Check's patent was valid and infringed. You should also assume that QXQ would have been willing to pay, and Circuit Check would have been willing to accept, the reasonable royalty they negotiated. Your role is to determine what Circuit Check and QXQ would have agreed upon if they had negotiated in this manner, not just what either Circuit Check or QXQ would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

- Royalties that others paid to Circuit Check for the patented invention;

- Royalties that QXQ paid to others for comparable patents;

- Whether Circuit Check had a policy of licensing or not licensing the patents;

- Whether Circuit Check and QXQ are competitors;

- Whether use of the patented invention helps to make sales of other products or services;

19

- Whether the product made using the patent is commercially successful, as well as its profitability;

- The advantages of using the patented invention over products not covered by the patent;

- The extent of QXQ's use of the patented invention and the value of that use to QXQ;

- Any royalty amounts that are customary for similar or comparable patented inventions;

- The portion of the profit on sales that is due to the patented invention, as opposed to other factors, such as unpatented elements or processes, features, or improvements developed by QXQ;

- Expert opinions regarding what would be a reasonable royalty.


## JURY INSTRUCTION NO. 49

## TOTALING THE DAMAGE AWARD - 11.4.7

Any amounts that you award for lost profits and for reasonable royalties should be set out separately on the verdict form that I will give you.


## III.  PROCEDURE FOR JURY DELIBERATION

Now, members of the jury, this case is ready to be submitted to you for your serious deliberation.  It is an important case.  It is important to the plaintiff, and it is important to the defendants.  Consider the case fairly, honestly, impartially, and in the light of reason and common

20

sense. Give each question in the verdict your careful and conscientious consideration. In answering each question, free your minds of all feelings of sympathy, bias, or prejudice. Let your verdict speak the truth, whatever the truth may be.

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if you are convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

As we've discussed, a form of verdict has been prepared for your convenience.

Certain questions in the verdict are to be answered only if you have answered a preceding question in a certain manner. Therefore, read the introductory portion of each question very carefully before you answer it. Do not needlessly answer questions.

Upon retiring to the jury room, you will select one of your members to act as your foreperson. The foreperson will preside over your deliberations, and will be your spokesperson here in court.

You will take to the jury room the verdict form that has been prepared for you. You must reach a unanimous verdict; that is, all eight of you must agree on the answer to each question. When you have reached unanimous agreement as to your verdict, your foreperson will write in the verdict the answers you have agreed upon and will date and sign the verdict; and then all of you will then return with your verdict to the courtroom.

I do not anticipate that you will need to communicate with me. If you do, however, the only proper way is in writing, signed by the foreperson, or if he or she is unwilling to do so, by some other juror, and given to the bailiff.

You will note from the oath about to be taken by the bailiff that he, too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case. Bear in mind also that you are never to reveal to any person how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict.